Johnson, J.
Although the entry of the decree in the court of appeals recites that the cause was *436 heard on the pleadings and an agreed statement of facts, the record here does not show that any bill of exceptions was taken in that court and no agreed statement of facts was given judicial sanction by any authentication of the court. Therefore, the only question left which this court is authorized to consider is whether the petition states facts sufficient to justify the decree complained of.
It is averred in that pleading that in March, 1889, the village passed the ordinance granting the franchise to The Citizens Electric Light & Power Company.
The plaintiff in error rests its case here on the broad proposition that the right to distribute electricity over the streets of the village emanates from the state and not from the municipality. It is contended that the plaintiff in error and its predecessor were organized under the laws of Ohio, with all the powers and privileges granted to telegraph and telephone companies by Section 9170 et seq., General Code, and that therefore no village ordinance was necessary to make its rights effective, except such as related to the mode of use.
Section 9170 provides that “A magnetic telegraph company may construct telegraph lines, from point to point, along and upon any public road,” etc., and Section 9178 enacts that when lands authorized to be appropriated for the use of such company are subject to the easement of a street, alley, public way or other public use, within the limits of a city or village, the mode of use shall be such as agreed upon between the municipal authorities and the company. If they cannot agree, *437 or if the municipal authorities unreasonably delay to enter into an agreement, the probate court of the county shall direct in what mode the line shall be constructed along such street, etc.
Section 9191 provides that the provisions of this chapter shall apply also to a company organized to construct a line or lines of telephone.
In City of Zanesville v. The Zanesville Telegraph & Telephone Co., 64 Ohio St., 67, it was said, at pages 80 and 81: “It will be noticed that it is not the right to use the streets that is made the subject of agreement between the company and the municipal authorities, or of determination by the court. That right, as has been seen, is granted to the company directly by the legislature, and it is not made to depend upon any consent or agreement on the part of the municipality. It is only the mode of such use that becomes the subject of agreement .or judicial determination.”
In Farmer et al. v. The Columbiana County Telephone Co., 72 Ohio St., 526, it is held: “Telephone companies organized in this state obtain power to construct their lines along the streets and public ways of municipal corporations from the state .by virtue of sections of the Revised Statutes, 3454 to 3471-8, inclusive, and not from the municipal authorities.” And in The Queen City Telephone Co. v. City of Cincinnati, 73 Ohio St., 64, it is said, at page 81: “It is of course conceded as now well settled that the general power to occupy the streets of a municipality by a telephone company is derived from the state.”
*438 It is contended by the plaintiff in error that Sections 9192 and 9193, General Code, confer upon electric light and power companies all of the powers conferred upon telegraph and telephone companies in the sections above referred to.
In the consideration of this contention it is necessary to briefly review the history of legislation on the subject. The sections of the General Code above mentioned are included in Section 3454 et seq., Revised Statutes. Those sections were in effect at the time the transactions involved in the cases above mentioned occurred, and were in effect long before the granting of the franchise described in the petition in this case.
The first enactment touching the power of companies organized for the purpose of supplying electricity for lighting streets, etc., was passed May 12, 1886 (83 O. L., 143), and authorized such companies to construct lines for conducting electricity for power and light purposes through alleys, etc., “with the consent of the municipal authorities of the city, village or town, and under such reasonable regulations as they may prescribe.” Prior to 1886 there was no statute conferring power on the municipality to grant to an electric light company the right to erect poles. In the following year the act of January 26, 1887 (84 O. L., 7), was passed as a supplementary section to Sections 3454 to 3471, being numbered Section 3471a. It provided that the provisions of the chapter (telegraphs and telephones), so far as the same may be applicable, shall apply also to any company organized for the purpose of supplying the public and private build *439 ings, manufacturing establishments, streets, alleys, squares and public places with electric light and power. This act did not repeal the act of May 12, 1886, supra, in express terms, but when the two acts are construed together it is clear that it was the intention of the legislature to confer upon electric light companies “the same powers and be subject to the same restrictions as are herein prescribed for magnetic telegraph companies.” This was the state of the law at the time of the granting of the franchise (March 4, 1889) which is involved in this case. Therefore, under the holdings in the cases cited, the grantee company derived its general power to occupy the streets from the state.
On April 21, 1896 (92' O. L., 205), Section 3471a was amended. This act made the provisions of the chapter as to telegraphs and telephones applicable, except Section 3461, which conferred power upon the probate court to determine the matter in the respects stated if the company and the municipal authorities fail to agree. This amendment of 1896 provided that in order to subject the same to municipal control alone, no person or company shall place, construct or maintain any line for lighting through any street, alley, etc., without the consent of such municipality. These provisions substantially have been carried into the General Code in Sections 9192 and 9193.
The act of 1896 disclosed that the legislature was not content to clothe electric light companies in municipalities with the same powers with which it had invested telegraph and telephone companies. The change was made in the light of experience, *440 and the sound and substantial reasons of public policy which dictated the change would seem to be manifest. There is a clear distinction between telegraph and 'telephone companies on the one hand and electric light companies on the other. The reasons why the state should desire to reserve to itself the right to grant franchises for the use of public highways to telegraph and telephone companies do not apply to electric light companies. Telegraph and telephone systems pervade the entire state. They pass in and out of cities and villages and through the rural districts, connecting the whole in a vast network. It might result in great public inconvenience if each municipality had the absolute right to arbitrarily grant or refuse permission to pass through its limits. It is easy to conceive that in many instances such an arbitrary right could be used to foster monopolies and combinations to the detriment of the general welfare. Generally speaking, these suggestions do not apply to an electric light company. As a general rule an electric light company is formed for the purpose of furnishing light to the municipality in which it is located and to its people. Its plant, its poles, wires and equipment are generally located there. But in addition to this, a more important consideration is that a system of telegraphs and telephones is comparatively harmless to life and property, while a system of electric lighting is highly dangerous to life and property. These are substantial reasons why the local authority should be vested with larger power to deal with a matter of such a nature and which comes in such close contact with its own peo *441 pie, than is necessary with reference to telegraphs and telephones. However, these are matters wholly within the power of the legislature, which, when exercised, must be judicially enforced.
The purpose of the act of 1896, now Sections 9192, 9193 and 9194, General Code, was to invest the municipality itself with power to make the grant. It specifically excepts the provision of Section 3461, Revised Statutes, and it expressly provides that in order to subject the same to municipal control alone, no company shall place electric wires for lighting, heating or power purposes in the streets of the city or village without the consent of such municipality. The elimination of Section 3461, Revised Statutes, and the use of the word “alone” abrogate the power of the probate court to act in such cases, and this is followed by the express provision requiring the consent of the municipality.
We are convinced, therefore, that the contention of the plaintiff in error that Section 9170 et seq., General Code, as now in force, clothe the electric light companies with all the powers of telegraph and telephone companies, is unsound.
None of the statutory provisions which were held, in the cases cited, to deny the power of the municipality to determine the right of the telegraph and telephone companies to occupy streets, etc., is included in the sections of the General Code relating to electric light and power companies. On the contrary, those sections contain a positive grant of such power to the municipality.
*442 However, as pointed out, the ordinance in question here was passed in 1889, while the act of 1887 was still in force. As to the judgment here attacked, inasmuch as neither the agreed statement of facts referred to in the decree of the court of appeals nor any other evidence has been brought upon the record by bill of exceptions or entry of the court, we are not able to estimate the force of plaintiff in error’s argument with reference to it. We are compelled to assume that the allegations of the petition were sustained by the evidence, and that the defendant, without the knowledge or consent of the plaintiff, removed all of its street lights from the streets, avenues and other public thoroughfares in the village, removed all of its wires, cut down and removed all of the poles used for the support of said wires and lights, completely dismantled its street-lighting system and rendered itself wholly unable to furnish any electricity whatever for the purposes of public lighting. It is manifest from Section 3 of the ordinance that the parties contemplated public lighting as an essential consideration leading to the granting of the franchise which was accepted by the predecessor of the plaintiff in error.
In this posture of the case, while in view of the statutory provisions which were in force at the inception of the enterprise the village would not be entitled to annul the company’s rights, still, by reason of the facts stated above and the voluntary abandonment by the company of its rights and privileges to the extent set forth, it cannot now return and repossess itself of such rights as it aban *443 doned without the consent of the village in accordance with existing law.
The judgment and decree of the court of appeals will, therefore, be affirmed.

Judgment affirmed.

Nichols, C. J., Donahue, Wanamaker, Newman, Jones and Matthias, JJ., concur.